717 S.E.2d 898

**LAWYER DISCIPLINARY BOARD, Petitioner**

v.

**Dennie S. MORGAN, Jr., a member of the West Virginia State Bar, Respondent.**

**No. 35513.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 2011.

Decided Oct. 25, 2011.

Rachael L. Fletcher Cipoletti, Jessica H. Donahue, Office of Disciplinary Counsel, Charleston, WV, Attorney for the Complainant.

Dennie S. Morgan, Jr., Oceana, WV, pro se.

PER CURIAM:

This lawyer disciplinary proceeding against Dennie S. Morgan, Jr. ("Mr. Morgan") was brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("Board"). The Board's Hearing Panel Subcommittee ("HPS") determined that Mr. Morgan committed numerous violations of the West Virginia Rules of Professional Conduct and recommended that Mr. Morgan be reprimanded, as well as other recommendations that will be more fully set forth in this opinion. Both the ODC and Mr. Morgan agree with the recommended punishments as set forth by the HPS. Based upon the parties' arguments to this Court, the record designated for our consideration, and the pertinent authorities, we agree with all but one recommendation set forth by the HPS. Specifically, we reject the HPS's recommendation that a public reprimand is sufficient discipline for the misconduct involved in this case and determine, instead, that a one-year license suspension is appropriate. The remaining HPS recommendations are adopted in full.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Morgan is a solo practitioner with his primary location of business in Wyoming County, West Virginia. He was admitted to the West Virginia State Bar in 2001. In the underlying disciplinary proceeding, Mr. Morgan entered into a stipulation with ODC as to all of the violations of misconduct as alleged in the Statement of Charges. The stipulation also set forth the recommended sanctions, which were adopted by the HPS. However, this Court, by order of March 31, 2011, disagreed with the recommended disposition and set this case for further review. A background of the undisputed facts follows.

### A. Count 1—Complaint of Claude E. Weatherly, Jr.

Claude E. Weatherly, Jr., paid the sum of $4,000.00 to Mr. Morgan on September 27, 2007, for Mr. Morgan's representation of his son, Keith Dale Weatherly ("Keith"), who had been indicted in Monroe County Circuit Court on September 11, 2007. Previously, Justin St. Clair, Esquire, had been appointed as counsel for Keith and was reappointed around September 30, 2007. Despite Mr. Morgan's retention in the case, Mr. St. Clair filed several motions on behalf of Keith. The circuit court approved Mr. Morgan's substitution as counsel on December 17, 2007. On February 26, 2008, the circuit court judge scheduled a status conference for March 3, 2008. The order noted that "[Mr. Morgan] failed to appear for a previously scheduled status conference" and that "the Court made several attempts to contact [Mr. Morgan] at his office to schedule a date for the conference, but has not received any feedback regarding possible dates that would be suitable." Thereafter, on March 17, 2008, Mr. Morgan failed to appear for another status conference, which was then rescheduled for April 7, 2008.

On April 11, 2008, Mr. Morgan and the client's father met to discuss a refund of the $4,000.00 payment due to Mr. Morgan's failure to attend several court appearances and failure to communicate. Mr. Morgan provided his client's father with a check refunding the full amount, but later stopped payment on the check.[1] The client's father eventually filed a civil action to obtain a default judgment against Mr. Morgan for the refund.

---

1. Mr. Morgan's recitation of the facts is that he was pressured into providing the refund check when his client's father stopped him on a public street.

He also filed a complaint with the ODC. Mr. Morgan failed to respond to the complaint as requested by the ODC on several occasions. In October 2009, the ODC requested and obtained a subpoena compelling Mr. Morgan to appear for a sworn statement, which eventually took place on December 2, 2009. During the sworn statement, the ODC requested a bill, accounting, and/or invoice for the work performed. The request was followed by a letter reiterating the request; however, Mr. Morgan failed to respond. A second letter was sent on January 11, 2010, to which Mr. Morgan again failed to respond. A third letter requesting this information was returned as unclaimed on February 16, 2010.

### B. Count 2—Complaint of Trampes E. Morgan

In July 2008, Trampes Morgan contacted Mr. Morgan about representation in a civil action in Braxton County for which he paid Mr. Morgan $2,600.00. At the beginning of his representation, Mr. Morgan would inform his client about upcoming hearings, only to then tell the client that court hearings had been postponed due to opposing counsel. This happened on at least three occasions. Eventually, Mr. Morgan failed to answer his client's phone calls or return messages. The client also discovered that, despite Mr. Morgan's representations, nothing had been filed in court.

In February 2009, Trampes Morgan filed a complaint against Mr. Morgan with the ODC. The ODC forwarded the complaint to Mr. Morgan, requesting a verified response within twenty days. Mr. Morgan failed to respond; thus, the ODC sent a second letter that was signed for and received by Mr. Morgan on March 12, 2009. Mr. Morgan's reply was filed on March 30, 2009.

### C. Count 3—Complaint of Treasa Neace

On March 29, 2011, Treasa Neace retained Mr. Morgan to represent her in a Wyoming County Family Court matter and paid him $5,000.00. From April 2006 through December 2008, Mr. Morgan represented the client in various hearings and filed various motions. The final family court hearing in the divorce case was held October 1, 2008. The client, on October 10, 2008, contacted Mr. Morgan by email regarding an appeal to the circuit court in the case. Thereafter, Mr. Morgan executed a handwritten document indicating that he was paid, in full, $2,000.00 to appeal the case. On November 1, 2008, the client paid Mr. Morgan an additional $3,000.00. A final divorce order was entered by the family court on December 2, 2008. On both December 11, 2008, and December 26, 2008, the client contacted Mr. Morgan by email concerning his failure to communicate with her. The client filed a pro se appeal of the final order in circuit court on December 30, 2008, and, on January 29, 2009, the client again contacted Mr. Morgan by email concerning a failed meeting attempt and asking for her client file. Further correspondence was attempted on February 12, 2009. On February 17, 2009, the client sent a certified letter informing Mr. Morgan of his dismissal as her counsel; however, the letter was returned to the client on March 3, 2009.

The client filed a complaint with the ODC regarding Mr. Morgan on March 2, 2009. The next day, the ODC forwarded the complaint to Mr. Morgan, who filed his response on April 8, 2009. During his sworn statement on December 2, 2009, Mr. Morgan was directed to provide a copy of the fee agreement and invoice, which request was reiterated the following day in a letter. Mr. Morgan failed to comply with either request, and a second letter was sent on January 11, 2010. Again, Mr. Morgan failed to comply. Thereafter, on January 20, 2010, the ODC sent Mr. Morgan a third letter by certified mail, which was later returned as unclaimed.

### D. Count 4—Complaint of Naomi Staton

Naomi Staton retained Mr. Morgan on October 3, 2008, regarding modification and enforcement of a final divorce order. From October 2008 through February 2009, the client paid Mr. Morgan a total of $1,000.00. From October 2008 through July 2009, the client called Mr. Morgan on a regular basis to inquire about the status of her case. Mr. Morgan repeatedly responded that hearings had been rescheduled and that she did not need to appear. Mr. Morgan also did not return many of the client's calls and lied about the reason for a delay in sending materials to the pension office as had been requested by the client. On June 29, 2009, the client contacted the lower court and discover-

ed nothing had been filed in her case. A few weeks later, the client sent a letter to Mr. Morgan telling him she no longer required his services and requesting the return of her payments for legal services and her client file.

The client filed a civil complaint on July 8, 2009, against Mr. Morgan in Wyoming County Circuit Court, alleging failure to perform legal service after payment. Two weeks later, she filed a complaint with the ODC, which forwarded the complaint to Mr. Morgan. He failed to respond. On September 25, 2009, the ODC sent a second letter to Mr. Morgan that he signed for and received.

2. Rule 1.3 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

3. Rule 3.2 of the West Virginia Rules of Professional Conduct states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

4. Rule 1.5 of the West Virginia Rules of Professional Conduct provides, in relevant part, as follows:
 (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 (1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
 (4) the amount involved and results obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
 (8) whether the fee is fixed or contingent.

5. Rule 1.16(d) of the West Virginia Rules of Professional Conduct states, in relevant part: "(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled[.]"

6. The relevant portions of Rule 8.4 of the West Virginia Rules of Professional Conduct provide as follows: "[i]t is professional misconduct for a lawyer to: . . . . (c) engage in conduct involving

### E. Statement of Charges

The Statement of Charges was issued against Mr. Morgan on March 10, 2010. It set forth the following alleged violations of the West Virginia Rules of Professional Conduct: Rules 1.3 [2] and 3.2 [3] for failure to appear for several hearings; Rules 1.5(a),[4] 1.16(d),[5] and 8.4(c) and (d) [6] for acceptance of fees for legal services and failure to provide those services; Rule 1.15(a) [7] for failure to set up, maintain, and/or deposit retainers into a separate account from his own property; Rules 1.4(a) and (b) [8] for failure to return communication to his clients; and Rule 8.1(b) [9] for failure to respond to the ODC's

dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]"

7. The relevant portion of Rule 1.15(a) of the West Virginia Rules of Professional Conduct requires:
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

8. West Virginia Rules of Professional Conduct 1.4(a) and (b) direct: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information[, and] (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

9. The relevant portion of Rule 8.1(b) of the West Virginia Rules of Professional Conduct provides as follows:
 An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
 . . . .
 (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]

lawful requests for information. Mr. Morgan did not respond to the charges until May 19, 2010. Eventually, Mr. Morgan stipulated to all of the alleged violations of misconduct set forth in the Statement of Charges. The stipulated rule violations, as well as the agreed-upon sanctions, were submitted to the HPS by Mr. Morgan and the ODC during a testimonial hearing on September 22, 2010.

The decision of the HPS was rendered January 20, 2011, and found that the evidence established that Mr. Morgan had violated the West Virginia Rules of Professional Conduct as suggested in the Statement of Charges. Specifically, the HPS concluded that Mr. Morgan had violated duties to his clients, the public, the legal system, and the legal profession. Further, his actions were determined to have been negligent rather than intentional, with a great amount of real and potential injury to Mr. Morgan's clients. The recognized aggravating factors were a pattern and practice of accepting retainer fees but then failing to carry out services; failing to communicate with clients; failing to respond to requests for information from the ODC; multiple offenses; and a prior admonishment by the Investigative Panel of the Lawyer Disciplinary Board for failure to communicate with clients. Mitigating factors were set forth as the absence of selfish or dishonest motive; remorse; and the fact that Mr. Morgan had been licensed to practice law since 2001, but had had no previous discipline imposed by the West Virginia Supreme Court of Appeals.[10]

The HPS followed the recommended sanctions as stipulated to by the OCD and Mr. Morgan. Specifically, the HPS recommended the following sanctions to this Court:

1) [Mr. Morgan] shall be reprimanded;

2) [Mr. Morgan] shall refund the unearned fee referenced in Count I in the amount of $4,000.00; in Count II in the amount of $2,000.00; and in Count IV in the amount of $1,000.00;

3) [Mr. Morgan's] practice shall be supervised for two years by an attorney agreed upon by the ODC and [Mr. Morgan]. [Mr. Morgan] will meet with the attorney every two weeks, and the office practice plan shall be based upon the Report of Barron K. Henley, Esq., and include implementation of those proposed changes to [Mr. Morgan's] office management as suggested by that report. Mr. Henley shall review and evaluate [Mr. Morgan's] office practices, and the goal will be to improve the quality and effectiveness of [Mr. Morgan's] law practice to the extent that the sanctioned behavior is not likely to recur;

4) [Mr. Morgan] shall arrange for Mr. Henley to call him for an after care phone call three months after the commencement of his supervised practice and prepare a written report to be submitted to ODC to ascertain the degree of progress of the changes to his law office management;

5) [Mr. Morgan] shall arrange for Mr. Henley to call him for an after care phone call six months after the commencement of his supervised practice and prepare a second written report to be submitted to ODC to ascertain the degree of progress of the changes to his law office management, and to ensure that any additional issues from the three months report are adequately addressed;

6) [Mr. Morgan] shall have his trust account audited for two years and shall provide such audit to ODC;

7) [Mr. Morgan] shall provide certification of his IOLTA [11] to ODC;

8) Pursuant to Rule 3.15, [Mr. Morgan] shall pay costs of the disciplinary proceeding.

(Footnote added). By its March 31, 2011, order, this Court disagreed with the recommended disposition and set this case for further review.

---

10. During testimony, Mr. Morgan offered other mitigating factors, including the fact that he was recovering from a financially contentious split with his former law partners and that he was pursuing litigation to rectify claims against these partners during the timeframe of his misconduct. He also was recovering from a divorce from his now ex-wife.

11. "IOLTA is an acronym for Interest [on] Lawyer Trust Accounts." *Lawyer Disciplinary Bd. v. Askin*, 203 W.Va. 320, 324 n. 8, 507 S.E.2d 683, 687 n. 8 (1998) (per curiam). Lawyers are required to maintain such an account under Rule 1.15 of the West Virginia Rules of Professional Conduct.

## II.

### STANDARD OF REVIEW

 It is well settled that " '[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syllabus point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984)." Syl. pt. 1, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). In Syllabus point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), we recognized this Court's standard of review for proceedings before the Board as follows:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Accord* Syl. pt. 3, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). Mindful of these guidelines, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

In their briefs, both the ODC and Mr. Morgan urge this Court to accept the disciplinary actions recommended by the HPS. The parties herein assert that the stipulated discipline appropriately addresses concerns of not only punishing Mr. Morgan, but also adequately serves as an effective deterrent to other members of the State Bar and restores public confidence in the ethical standards of the legal profession. Further, the parties assert that the HPS considered the totality of the evidence, including aggravating and mitigating factors, in reaching its recommended sanctions. Therefore, they advocate that this Court should uphold the recommendations. We disagree with the recommendation for a reprimand, and, instead, impose a one-year license suspension, in addition to the remainder of the sanctions recommended by the HPS.

 In the present case, the parties have stipulated to the facts as adopted by the HPS and submitted them to this Court, including the specific rules of conduct that were violated. As this Court previously has explained, the ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). Further, once the HPS makes its factual findings, they are afforded substantial deference. *See* Syl. pt. 3, *McCorkle*, 192 W.Va. 286, 452 S.E.2d 377. The record supports the adoption of the facts, as well as the corresponding rule violations. While we agree with the facts and violations as agreed to by the parties, and as recommended to this Court by the HPS, we disagree with the recommended sanctions and will exercise our own independent judgment in fashioning appropriate attorney discipline. *See* Syl. pt. 3, *McCorkle*, 192 W.Va. 286, 452 S.E.2d 377.

Our analysis of the appropriate sanctions necessarily includes the well-settled principles that

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

### (1) Duties Owed to Clients, the Public, the Legal System, or the Profession

First, we determine whether Mr. Morgan violated a duty owed to a client, to the public, to the legal system, or to the profession. We recognize that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). The parties stipulated to the fact that Mr. Morgan's actions violated duties to clients, the public, and the legal profession. Specifically, we have held that "[s]tipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed." Syl. pt. 1, *Butler v. Transfer Corp.*, 147 W.Va. 402, 128 S.E.2d 32 (1962). Further, we have explained that

> [w]here facts are stipulated, they are deemed established as full as if determined by the [trier of facts]. A stipulation is a judicial admission. As such, it is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact.

*Matter of Starcher*, 202 W.Va. 55, 61, 501 S.E.2d 772, 778 (1998) (internal citation omitted). Neither party is asking for relief from the stipulations as they were agreed upon; therefore, we will not disturb those stipulations regarding the underlying facts and the rule violations. However, we maintain our discretion in determining the appropriate sanctions to adequately discipline the misconduct.

### (2) Degree of Intransigence of Conduct

Second, we review the degree of intransigence in Mr. Morgan's actions. Specifically, we must determine whether Mr. Morgan's actions were intentional, knowing, or negligent in nature. All three levels of culpability warrant discipline; however, the degree of the misconduct is an issue in determining the severity of discipline to be imposed.

The HPS determined that Mr. Morgan's conduct was negligent, which is the lowest level of intransigence. In so finding, the HPS stated that "[t]he ABA Standards for Imposing Lawyer Sanctions define negligence as the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in that situation." The lower findings state that the evidence shows that, while he had only one bank account, Mr. Morgan did not knowingly or intentionally commingle moneys. We disagree.

While it may be true that Mr. Morgan was unaware that his single account was inadequate as an IOLTA account, such ignorance of knowledge does not relieve him of the duty to know the proper procedural safeguards for client money and to act accordingly. In essence, his actions amounted to commingling of client funds, coupled with failure to rectify the situation when his clients requested refunds on numerous occasions. "This Court, like most Courts, proceeds from the general rule, that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 499, 513 S.E.2d 722, 726 (1998) (citing *Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 561, 505 S.E.2d 619, 631 (1998)). *Accord Lawyer Disciplinary Bd. v. Brown*, 223 W.Va. 554, 678 S.E.2d 60 (2009) (per curiam). In *Kupec*, misappropriation offenses are classified according to the level of intent and the level of the injury. The American Bar Association standards are consistent with this general rule in finding disbarment appropriate in cases of knowing conversion with injury or potential injury to the owner of entrusted funds.[12] *See generally*

---

12. There are many recent cases by this Court annulling law licenses for misappropriation of funds. *See generally Lawyer Disciplinary Bd. v. Barton*, 225 W.Va. 111, 690 S.E.2d 119 (2010) (per curiam); *Lawyer Disciplinary Bd. v. Brown*, 223 W.Va. 554, 678 S.E.2d 60 (2009) (per curiam); *Lawyer Disciplinary Bd. v. Wade*, 217 W.Va. 58, 614 S.E.2d 705 (2005) (per curiam); *Lawyer Disciplinary Bd. v. Wheaton*, 216 W.Va. 673, 610 S.E.2d 8 (2004) (per curiam). *But see Lawyer Disciplinary Bd. v. Martin*, 225 W.Va. 387, 693 S.E.2d 461 (2010) (per curiam) (finding suspension to be appropriate where attorney owed money to clients, but determining that he

ABA/BNA Lawyers' Manual on Professional Conduct § 01:801 (1992). Restitution may be considered as a mitigating factor in the imposition of sanctions. *Kupec*, 202 W.Va. at 570, 505 S.E.2d at 633. However, for restitution to be accepted as a mitigating factor, it must be made promptly. *Id.*

If Mr. Morgan's actions were truly negligent and not intentional or knowing, the same misconduct would not have been repeated on numerous occasions. Instead, Mr. Morgan continued to charge clients money for work that he never performed; he lied to the clients about the status of their cases; and, when his actions were discovered, he failed to immediately refund their money or to respond to information requests from the ODC. Any funds that were eventually refunded were paid only after the threat or imposition of disciplinary proceedings. Therefore, we do not agree that Mr. Morgan's actions were merely negligent.

### (3) Amount of Real or Potential Injury

Third, we examine the amount of real injury or potential injury in this matter. In all of these cases, Mr. Morgan created real injury by failing to return the unearned fees. Moreover, Mr. Weatherly's son was continually incarcerated during the time of Mr. Morgan's misconduct. Similarly, during the time Mr. Morgan failed to file any paperwork in client Morgan's case, the client was unable to visit with his child. Further, failing to file an appeal in client Neace's divorce proceeding could have limited her ability to challenge any of the rulings in her case, and also forced client Neace to file a *pro se* appeal. Lastly, there was potential for injury related to Mr. Morgan's failure to inform client Staton that he had not pursued her divorce order modification as she requested. Mr. Morgan's misconduct, including his multiple failures to respond to the ODC's requests for information,[13] has brought both the legal system and the profession into disrepute.

### (4) Presence of Mitigating and Aggravating Factors

Fourth, discipline can be adjusted based on the presence of mitigating and aggravating factors. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). The *Scott* opinion, at Syllabus point 3, further explains that

[m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions;

---

would have been entitled to such money if he had performed the work, thus, license was only suspended and not annulled); *Lawyer Disciplinary Bd. v. Dues*, 218 W.Va. 104, 624 S.E.2d 125 (2005) (finding public reprimand and other sanctions to be appropriate in case where attorney owed restitution to clients, but focusing on significant mitigating factor of mental illness).

13. This Court, on previous occasions, has upheld public reprimands as appropriate sanctions for negligent misconduct and failures to respond to written and oral requests for information concerning disciplinary complaints. *See Committee on Legal Ethics v. Martin*, 187 W.Va. 340, 419 S.E.2d 4 (1992) (concluding failure to respond to requests for information from disciplinary counsel warrants public reprimand); *Lawyer Disciplinary Bd. v. Roberts*, 217 W.Va. 189, 617 S.E.2d 539 (2005) (finding conduct involving lack of diligence, lack of communication, and failure to respond to disciplinary counsel warrants public reprimand). Further, "failure to respond to written and oral requests from the state bar for information concerning disciplinary complaint warrants a public reprimand." *Committee on Legal Ethics v. Martin*, 187 W.Va. 340, 419 S.E.2d 4 (1992). However, we note that Mr. Morgan's actions were more severe than the actions in these representative cases. Further, Mr. Morgan's misconduct consisted of more than a mere failure to respond to requests for information.

(12) remorse; and (13) remoteness of prior offenses.

213 W.Va. 209, 579 S.E.2d 550. By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Scott, id.*

Before the HPS, the recognized aggravating factors were a pattern and practice of accepting retainer fees but then failing to carry out services; failing to communicate with clients; failing to respond to requests for information from the ODC; multiple offenses; and prior disciplinary actions. Further, Mr. Morgan had been admonished on a previous occasion for failure to communicate with clients. Mitigating factors were set forth as the absence of selfish or dishonest motive; remorse; and the fact that Mr. Morgan had been licensed to practice law since only 2001. During testimony, Mr. Morgan offered other mitigating factors, including that he was recovering from a financially vicious split with former law partners and pursuing litigation to rectify claims against these partners during the time frame of his misconduct. He also was recovering from a divorce from his now ex-wife. Mr. Morgan has expressed remorse and has contacted the victims to apologize and admit he acted inappropriately. He also apologized and admitted his negligence to the ODC. Mr. Morgan also points out that none of the aggrieved clients voiced objection to the sanctions as recommended by the ODC.

Taking into account the evidence, including the mitigating factors and the aggravating factors, we conclude that the recommendations submitted by the HPS are too lenient. We are reminded that,

" '[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Com-*

*mittee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989).

Syl. pt. 7, *Jordan,* 204 W.Va. 495, 513 S.E.2d 722. Based on the severity and number of instances of Mr. Morgan's misconduct, as well as the financial, legal, and emotional impact his actions have had on his clients and the public, the only adequate discipline that would serve the public policy interests is a one-year suspension of Mr. Morgan's law license. The remaining sanctions as proposed by the HPS are hereby adopted in full.

## IV.

### CONCLUSION

For the foregoing reasons, we adopt, as moulded, the sanctions as recommended by the Hearing Panel Subcommittee:

1) Mr. Morgan's license to practice law shall be suspended for a period of one year;

2) That Mr. Morgan be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;

3) Prior to reinstatement, Mr. Morgan shall furnish proof that he refunded the unearned fee referenced in Count I in the amount of $4,000.00; in Count II in the amount of $2,000.00; and in Count IV in the amount of $1,000.00;

4) Upon reinstatement, Mr. Morgan's practice shall be supervised for two years by an attorney agreed upon by the ODC and Mr. Morgan. Mr. Morgan will meet with the attorney every two weeks, and the office practice plan shall be based upon the Report of Barron K. Henley, Esq., and include implementation of those proposed changes to Mr. Morgan's office management as suggested by that report. Mr. Henley shall review and evaluate Mr. Morgan's office practices, and the goal will be to improve the quality and effectiveness of Mr. Morgan's law practice to the extent that the sanctioned behavior is not likely to recur;

5) Mr. Morgan shall arrange for Mr. Henley to call him for an after-care phone call three months after the com-

mencement of his supervised practice and prepare a written report to be submitted to the ODC to ascertain the degree of progress of the changes to his law office management;

6) Mr. Morgan shall arrange for Mr. Henley to call him for an after-care phone call six months after the commencement of his supervised practice and prepare a second written report to be submitted to the ODC to ascertain the degree of progress of the changes to his law office management, and to ensure that any additional issues from the three months report are adequately addressed;

7) Upon reinstatement, Mr. Morgan shall have his trust account audited for two years and shall provide such audit to the ODC;

8) Mr. Morgan shall provide certification of his IOLTA to the ODC; and

9) Prior to reinstatement and pursuant to Rule 3.15, Mr. Morgan shall pay costs of the disciplinary proceeding.

Law License Suspended and Other Sanctions.