No. 15-0977 - *LDB v. James J. Palmer, III*

FILED
April 5, 2017
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Loughry, C. J., dissenting:

I disagree with the thirty-day suspension and the six-month period of supervised practice issued by the majority inasmuch as I believe that the respondent's demonstrated pattern of a lack of diligence and communication, and his refusal to modify his conduct in the face of prior professional discipline, require a harsher sanction. The respondent's dismissive attitude about his negligent professional conduct in this matter also indicates that a greater sanction is necessary to correct his misbehavior. It is well-established that

> [i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. Pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). I do not believe the sanction imposed by the majority adequately serves any of these purposes.

In the instant matter, the respondent failed to timely file a court-mandated amended petition for a writ of habeas corpus and the accompanying *Losh*[1] list. He failed to do so even *after* his client sent him numerous letters, *after* his client filed an ethics complaint,

---

[1]*See Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

1

and *after* the circuit court established a specific deadline for filing the habeas documents. Although the respondent contends that a mistaken belief about the availability of facsimile filing on New Year's Eve resulted in the late filings, he still waited an additional eight days to file the *Losh* list and more than two more months to file the amended habeas petition. Notably, the respondent only filed the amended habeas petition after receiving additional correspondence from the Office of Disciplinary Counsel. His response to these failures was to merely characterize them as "easily cured." Thereafter, the respondent continued to fail to communicate with his client about the remedial measures undertaken to cure his dilatory conduct. It should not be lost on this Court that during the time period when the respondent should have been preparing and filing his client's amended habeas petition and *Losh* list, he found the time to respond to the ethics complaint.[2]

The respondent's cavalier attitude about his dilatory conduct is particularly disturbing because he was previously admonished by the Investigative Panel in three other matters for precisely the same type of misconduct.[3] Despite the three written

---

[2]It is, of course, the respondent's obligation to timely respond to inquiries from the Office of Disciplinary Counsel. It is likewise his obligation to protect his clients' interests by timely and diligently advocating for them at least as vigorously as he protects his own interests.

[3]The Investigative Panel admonished the respondent in 2013 and twice in 2014 for misconduct including a lack of competent representation, lack of diligence, failure to communicate with his clients, and failure to timely respond to disciplinary counsel. *See* R. Lawyer Disciplinary Pro. 2.9(c) (2017) (authorizing Investigative Panel to issue written admonishment upon finding probable cause to conclude lawyer violated Rules of

admonishments, he obviously took no corrective action. "Prior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust." Syl. Pt. 5, *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986). Moreover, the respondent's present unethical behavior, when considered in light of his three prior admonishments for the same treatment of other clients, demonstrates a clear pattern of misconduct. The Court has often recognized that a pattern of unethical behavior warrants an increased sanction. *See e.g., Lawyer Disciplinary Board v. Rossi*, 234 W.Va. 675, 685, 769 S.E.2d 464, 474 (2015); *Lawyer Disciplinary Board v. Morgan*, 228 W.Va. 114, 124, 717 S.E.2d 898, 908 (2011); *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 217, 579 S.E.2d 550, 558 (2003).

Equally troubling is the respondent's repeated insistence that he was handling this case, and that he frequently does other court-appointed work, without submitting vouchers for the payment of his fees. In my view, this assertion has absolutely no mitigatory effect. Rather, his argument strikes dangerously close to an insinuation that indigent clients are somehow entitled to lesser representation because of their indigency. This Court should not countenance even the mere suggestion that court-appointed or *pro bono* lawyers are held to a more forgiving standard of professional conduct.

---

Professional Conduct).

A more severe sanction in this matter is supported by our precedent. In *Lawyer Disciplinary Board v. Hollandsworth*, No. 14-0022 (W.Va. Sept. 18, 2014) (unreported order), an attorney received a ninety-day suspension for failing to pursue a habeas matter and for failing to communicate with his client. This is precisely the same conduct in which the respondent herein engaged. *See also*, *Lawyer Disciplinary Board v. Conner*, 234 W.Va. 648, 769 S.E.2d 23 (2015) (lawyer suspended for ninety days for violations of Rules of Professional Conduct, primarily a pattern of neglect and failure to communicate); *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994) (three month suspension from practice of law for lack of diligence and failure to communicate).

In *Lawyer Disciplinary Board v. Sturm*, 237 W.Va. 115, 785 S.E.2d 821 (2016), this Court issued a ninety-day suspension for an attorney's failure to file habeas pleadings, communicate with her clients, deposit a retainer in a trust account, and make a timely refund of the retainer. Although Ms. Sturm's misconduct also involved the mishandling of a retainer, the severity of the sanction this Court would have otherwise imposed was *reduced* to a ninety-day suspension because of "significant personal events outside her control" that were deemed to be mitigating factors. *See id.* at 127, 785 S.E.2d at 833. Here, the respondent has no such outside factors purportedly causing his dilatory conduct. Indeed, the respondent has given little or no explanation for his gross inaction.

The Hearing Panel Subcommittee suggests that *Sturm* is distinguishable because the respondent herein did, ultimately, file the required pleadings, whereas lawyer Sturm failed altogether to file documents. I disagree. In my view, the fact that the respondent managed to obtain leave of court to file these habeas pleadings beyond the due date is of no moment–particularly considering that he only filed the documents when confronted with an ethics complaint, a court order, and subsequent correspondence from the Office of Disciplinary Counsel. The respondent should not be rewarded for successfully correcting an egregious legal error of his own making lest this Court send a message of "no harm, no foul." While injury or harm is certainly a consideration for lawyer disciplinary matters, where a repeat offender such as the respondent is before this Court, it is the persistent conduct which should drive the imposition of sanctions.

Finally, I believe that the respondent's period of supervised practice should be increased. He has not explained the reasons behind his dilatory conduct, thus a supervising attorney will be required to ferret out the problems before those problems can be addressed. The six-month period of probation and supervision imposed by the majority is simply not enough time for a supervising attorney to review the respondent's law practice and office procedures, oversee the implementation of new policies and procedures, and ensure that the new policies and procedures are consistently followed.

5

In view of the foregoing, I would impose a ninety-day suspension with a requirement of one year supervised practice to properly advance the goals of punishment, deterrence, and corrective action, while also assuring the public that indigent defendants are not deserving of lesser representation.  Accordingly, I respectfully dissent.