**FILED**

**November 12, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-129 – *Lawyer Disciplinary Board v. Benjamin Freeman*

Ewing, Justice, concurring, in part, and dissenting, in part, joined by Bunn, Justice:

I concur with the majority's adoption of the Hearing Panel Subcommittee's ("HPS") findings of fact and analysis of those facts under *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998). Similarly, I agree with the HPS and the majority that Mr. Freeman's conduct warrants a substantial sanction but does not necessitate disbarment. However, I believe that, after thoroughly applying the relevant case law to the admitted violations, a sanction harsher than an eighteen-month suspension is dictated. Therefore, I write separately to provide justification for a harsher sanction short of annulment for Mr. Freeman's misconduct.

Much of the Office of Disciplinary Counsel's ("ODC") argument and the majority's discussion focuses on Mr. Freeman's misconduct with respect to Ms. Allison's retainer fee, as alleged in Count Three of the Statement of Charges. Recently, in *Lawyer Disciplinary Board v. Harris*, we distinguished between intentional misappropriation cases warranting annulment and "fee dispute" cases involving mishandled fees or conversion of unearned fees, which typically warrant a lesser, one-year sanction based on less culpable conduct. 251 W. Va. 376, ---, 914 S.E.2d 249, 272-73 (2025). While I concur with the majority's conclusion that this is not an annulment case, I write separately because analysis of these two categories of misconduct leads to the inexorable conclusion that, in arriving at an eighteen-month suspension, the majority has either (1) discounted Mr. Freeman's intentional, self-serving conduct toward Ms. Allison as a mere act of negligence in line

1

with the one-year cases or (2) accounted for that intentional, self-serving conduct as warranting eighteen months' suspension, in which case it has wholly ignored Mr. Freeman's other, six remaining counts and resulting twenty-seven additional violations of the Rules of Professional Conduct. In giving these violations their due consideration, a harsher sanction than an eighteen-month suspension is warranted.

As noted in *Harris*, the circumstances that demand disbarment in misappropriation cases typically involve multiple or repeated instances of intentional misappropriation, conversion of client settlement funds as opposed to unearned fees, conversion of client funds for personal use, and other more serious fraudulent conduct. 251 W. Va. at ---, 914 S.E.2d at 272-73. *See, e.g.*, *Law. Disciplinary Bd. Greer*, 252 W. Va. 1, 917 S.E.2d 1 (2024) (attorney knowingly took monies from multiple clients over the course of numerous years); *Law. Disciplinary Bd. v. Kohout*, 238 W. Va. 668, 798 S.E.2d 192 (2016) (conversion of settlement proceeds resulting in injury to client and a third-party, in addition to "a slew of aggravating factors" and absence of mitigating factors); *Law. Disciplinary Bd. v. Scotchel*, 234 W. Va. 627, 768 S.E.2d 730 (2014) (failure to provide client with proceeds from sale of client's business); *Law. Disciplinary Bd. v. Brown*, 223 W. Va. 554, 678 S.E.2d 60 (2009) (conversion of settlement funds to purchase cocaine instead of paying subrogation claims of his client's insurers); *Law. Disciplinary Bd. v. Coleman*, 219 W. Va. 790, 639 S.E.2d 882 (2006) (conversion of approximately $170,000 in legal fees where attorney redirected clients' wire transfers into his personal account); *Law. Disciplinary Bd. v. Wheaton,* 216 W. Va. 673, 610 S.E.2d 8 (2004) (pattern of

2

misappropriating and unlawfully converting client funds over five-year span, including mishandling settlement funds and routinely accepting legal fees for services never performed); *Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (embezzling over $500,000 from elderly client while acting as her appointed committee).

This Court then explained that circumstances more attuned to "unreasonable and mishandled fee[s]" or "amounts designated and disputed as fees" may not always be equated to misappropriation and the harsh sanctions attendant to it. *Harris*, 251 W. Va. at ---, 914 S.E.2d at 272-273; *Jordan*, 204 W.Va. at 497, 513 S.E.2d at 724, Syl. Pt. 6 (articulating general rule that, absent compelling circumstances, misappropriation warrants disbarment). Under such circumstances, we have found a one-year suspension or less appropriate based on lack of a culpable mental state or other mitigating factors. *See Law. Disciplinary Bd. v. Morgan*, 228 W. Va. 114, 122, 717 S.E.2d 898, 906 (2011) ("[W]e must determine whether [the respondent's] actions were intentional, knowing, or negligent in nature. All three levels of culpability warrant discipline; however, the degree of the misconduct is an issue in determining the severity of discipline to be imposed.").

In *Morgan*, the respondent attorney showed a pattern of accepting retainer fees then failing to carry out services, and he also failed to deposit the retainers in a separate account. 228 W. Va. at 120, 717 S.E.2d at 904. Similar to the conduct here, the Court found that Mr. Morgan had acted intentionally, demonstrated by a pattern of offenses. *Id.* at 122,

717 S.E.2d at 906. Notably, in arriving at a one-year suspension, the Court observed that Mr. Morgan was unaware his account was inadequate for IOLTA purposes and that he lacked a selfish or dishonest motive. In *Lawyer Disciplinary Board v. Thorn*, we issued a one-year suspension for multiple counts of non-refundable retainers that were placed into operating accounts and never earned. 236 W. Va. 681, 783 S.E.2d 321 (2016). There, however, we found that Mr. Thorn's conduct was negligent except as to one client, and was attributable, in part, to a significant depressive episode. *Id.* at 698, 783 S.E.2d at 338. Like *Morgan*, absent from Mr. Thorn's case was the presence of a dishonest or selfish motive. *Id. See also Law. Disciplinary Bd. v. Haught*, 233 W. Va. 185, 757 S.E.3d 609 (2014) (one-year suspension where respondent withdrew client funds from an IOLTA account, but did not convert to personal use); *Law. Disciplinary Bd. v. Atkins*, 243 W. Va. 246, 842 S.E.2d 799 (2020) (nine-month suspension for negligently supervising staff that resulted in deposit of client funds into operating account).

But here, Mr. Freeman acted knowingly and intentionally. He knew he had not used his IOLTA account in over two years and so was aware that he was depositing Ms. Allison's funds into an operating account prior to earning it. The record further reflects that Mr. Freeman had a negative account balance prior to depositing Ms. Allison's funds in his operating account and that he immediately withdrew funds to pay a personal debt. Moreover, Mr. Freeman was untruthful with the ODC about his IOLTA account and unearned fees in Ms. Allison's case. Mr. Freeman's intentional conduct, coupled with his mishandling of funds put to personal use and dishonesty with the ODC warrants a harsher

4

sanction than those imposed in the cases sanctioning attorneys to one year of suspension.

Observing that Mr. Freeman's conduct falls somewhere at the midpoint on the scale of annulment to one-year suspension cases, an eighteen-month suspension would have been appropriate for his Rule violations relative to Ms. Allison's case alone. Unfortunately, Mr. Freeman's professional transgressions were not limited to his mishandling and misuse of Ms. Allison's retainer fee. In addition to the nine violations at issue in Count Three, Mr. Freeman admitted to an additional twenty-seven violations of the Rules of Professional Conduct as alleged in Counts One, Two, Four, Five, Six and Seven of the Statement of Charges. Therefore, the analysis of an appropriate sanction cannot end with the conduct involving Ms. Allison.

As noted above, the majority's analysis would appear to place heavy emphasis on Mr. Freeman's conduct relative to Ms. Allison, merely acknowledging that this Court has sanctioned attorneys generally for the conduct involved in his other rule violations. But in the absence of a meaningful, independent analysis of the circumstances of Mr. Freeman's additional violations based on the rationale of similarly-situated cases and the sanctions imposed therein, I am left with the conclusion that the Court has departed from "respectful consideration" of the recommended sanction in favor of a cobbled post-hoc justification for the number HPS reached. *See* Syl. Pt. 1, in part, *Law. Disciplinary Bd. v. Cain*, 245 W. Va. 693, 865 S.E.2d 95 (2021). Mindful that we conduct a de novo review and "'[t]his Court is the final arbiter of legal ethics problems and must make the ultimate

decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law[,]'" I diverge from the majority's approach not only because its evaluation of fee mishandling diminishes the seriousness of that conduct, but also because I find that an eighteen-month suspension likewise unduly depreciates the seriousness of the additional twenty-seven Rule violations at issue in Counts One, Two, Four, Five, Six and Seven. *Cain*, 245 W. Va. at 695, 865 S.E.2d at 97, Syl. Pt. 2.

All six of the remaining counts involve Mr. Freeman's (a) failure to "act with reasonable diligence and promptness in representing a client" in violation of Rule 1.3; (b) knowing disobedience of an obligation under the rules of a tribunal in violation of Rule 3.4(c); and (c) "conduct that is prejudicial to the administration of justice" in violation of Rule 8.4(d). Mr. Freeman also admitted to multiple instances of failing to respond to a lawful demand for information from disciplinary authority in violation of Rule 8.1(b), as well as failing to keep clients informed about the status of their cases in violation of Rule 1.4(a)(3). In addition, Mr. Freeman admitted to violating Rule 3.2 by failing to "make reasonable efforts to expedite litigation" consistent with his clients' interests in all four counts related to abuse and neglect appeals before this Court.

Specifically, Mr. Freeman failed to timely perfect five abuse and neglect appeals, each of which resulted in this Court ordering Mr. Freeman to appear and show cause why he should not be held in contempt for failure to perfect the appeal. In each of those five cases, Mr. Freeman failed to comply with this Court's Scheduling Orders and

6

Notices of Intent to Sanction and failed to timely respond to the ODC's inquiries. Only after receipt of each Rule to Show Cause Order did Mr. Freeman perfect his client's respective appeals. As a result of Mr. Freeman's dilatory conduct and disregard for this Court's deadlines, his clients and their children experienced an extended period of uncertainty and an unnecessary delay in permanency. Similarly, Mr. Freeman ignored court orders, deadlines, phone calls, and correspondence related to his representation of Mr. Young and Mr. Murray, and he disregarded numerous letters and even certified mail sent to him from the ODC.

Mr. Freeman's pattern of ignoring court orders, deadlines, and correspondence is inexcusable and yet is relegated to a blip in the majority's analysis that this Court has responded with suspension for failure to perfect an appeal and to otherwise communicate with clients. In *Lawyer Disciplinary Board v. Conner*, cited by the majority for this prospect, we imposed a ninety-day suspension in addition to two years' supervised practice for failing to perfect an appeal in *one* case, where that practitioner was held in contempt of this Court and otherwise failed to communicate with clients. 234 W. Va. 648, 769 S.E.2d 25 (2015). Mr. Freeman failed to perfect *five* appeals in abuse and neglect cases, was held in contempt of Court for failure to respond to this Court's deadlines and communications, and was ultimately removed from the court appointed attorneys list. We have found that an attorney's "fail[ure] to respond to the deadline and entreaties of this Court regarding the filing of briefs . . . weighs heavily against [him]" yet I do not see that the severity of these offenses is properly reflected in the crafted sanction. *Law.*

7

*Disciplinary Bd. v. Grindo*, 231 W. Va. 365, 371, 745 S.E.2d 256, 262 (2013).

Similarly, the majority cites *Lawyer Disciplinary Board v. Curnutte*, 251 W. Va. 839, 916 S.E.2d 681 (2025), in which an attorney was suspended for six months for eleven violations involving lack of diligence, failure to communicate, and ignoring the ODC. However, although Mr. Freeman admitted to more than twenty-seven similar violations, more than double the violations that justified a six-month suspension in *Curnutte*, the majority took no steps to analogize or distinguish Mr. Freeman's conduct from that in *Curnutte* or any other case in determining an appropriate sanction for similar conduct. In several other cases, even two-year suspensions have been deemed appropriate for conduct similar to Mr. Freeman's conduct underlying Counts One, Two, Four, Five, Six and Seven. *See, e.g.*, *Law. Disciplinary Bd. v. Schillace*, 247 W. Va. 673, 885 S.E.2d 611 (2022) (two-year suspension for seven counts and fifty-three violations involving lack of diligence, ignoring communication from clients and ODC, and disregard for court orders, but where mental health issues considered a mitigating factor); *Law. Disciplinary Bd. v. Grafton*, 227 W. Va. 579, 587, 712 S.E.2d 488, 496 (2011) (two-year suspension where attorney "continued in a pattern and practice of repeatedly failing to communicate with and for his clients, and not responding to requests of the ODC. . . . [And he] also deceived his client by allowing her to believe that he was acting diligently and an appeal had been perfected in her case"); *Law. Disciplinary Bd. v. Hardin*, 217 W. Va. 659, 619 S.E.2d 172 (2005) (two-year suspension for disobeying discovery orders, missing hearings, and ignoring circuit court sanctions).

Acknowledging that there is no magic formula in these types of cases and that they are largely circumstance driven, I conclude that Mr. Freeman's conduct warrants a harsher sanction than the eighteen months imposed by the majority based on my review of these cases arising from similar circumstances and Mr. Freeman's culpable mental state. *Law. Disciplinary Bd. v. Sirk,* 240 W. Va. 274, 282, 810 S.E.2d 276, 284 (2018) ("There is no 'magic formula' for this Court to determine how to weigh the host of mitigating and aggravating circumstances to arrive at an appropriate sanction; each case presents different circumstances that must be weighed against the nature and gravity of the lawyer's misconduct.").

In contemplating a suitable sanction, I have given due consideration to Mr. Freeman's repeated excuse of becoming overwhelmed as a solo practitioner. During his testimony before the HPS, Mr. Freeman gave a one-word explanation: "Caseload." When asked why he had not done what he was required to do, he stated that "things were hitting [him] left, right and center," that he "got overwhelmed and got behind." It is a simple, understandable explanation and a common situation among solo practitioners, particularly those handling court-appointed cases. However, it does not justify violations of an attorney's duties to his clients, the public, the legal system, and to the legal profession. This Court has explained that "[w]hile we understand that sometimes a lawyer's personal problems require the lawyer's utmost attention, this focus of a lawyer's attention cannot come at the client's expense." *Law. Disciplinary Bd. v. Sturm*, 237 W. Va. 115, 128, 785

9

S.E.2d 821, 834 (2016).

A lawyer in Mr. Freeman's situation cannot avoid problems or their consequences by adopting the ostrich-with-its-head-in-the-sand approach to problem-solving. Nearly all of Mr. Freeman's violations could have been avoided by taking the simple steps of maintaining communication with his clients and the courts, filing necessary motions for extensions or continuances, responsibly opening and addressing mail, and advising courts when his case load became overwhelming. Although Mr. Freeman does express remorse for his misconduct, he also attributes much of his unresponsiveness and delays to the fault of others including clients, court clerks, mail delivery, and courts. Therefore, Mr. Freeman's lukewarm, waffling mea culpa misses the mark and is not convincing enough to lessen the gravity of his misconduct. It appears that much of the misconduct at issue arises from poor management of his law practice and his professional responsibilities. For this reason, I believe that the potential of supervision of his practice in the future should be addressed during any reinstatement proceedings.

Because I would have imposed a harsher sanction based on Mr. Freeman's pattern of misconduct and disregard for his professional and ethical obligations, albeit stopping short of annulment, I respectfully concur, in part, and dissent, in part, and am authorized to state that Justice Bunn joins in this separate opinion.