# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2016 Term

No. 14-0670

**FILED**

**March 3, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LAWYER DISCIPLINARY BOARD,**
Petitioner

**V.**

**THORN H. THORN,**
**A MEMBER OF THE WEST VIRGINIA STATE BAR,**
Respondent

Lawyer Disciplinary Proceeding
No. 14-0670
LAW LICENSED SUSPENDED AND OTHER SANCTIONS

Submitted: February 9, 2016
Filed:  March 3, 2016

Renee Frymyer
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Attorney for the Petitioner

Thorn H. Thorn
Morgantown, West Virginia
Respondent, *Pro Se*

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).


2.      "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

3. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

4. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

5. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d

550 (2003).

7.      "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

8.      "In a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is medical evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely." Syllabus point 3, *Lawyer Disciplinary Board v. Dues*, 218 W. Va. 104, 624 S.E.2d 125 (2005).

**Davis, Justice:**

The West Virginia State Bar Lawyer Disciplinary Board instituted multiple disciplinary charges against the respondent, Thorn H. Thorn, Esquire ("Mr. Thorn"). The disposition recommended by the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board included a ninety-day suspension of Mr. Thorn's law license, in addition to other recommended sanctions. Mr. Thorn accepts the recommended suspension and sanctions.

The Office of Disciplinary Counsel ("ODC") disagreed with the length of the proposed suspension and recommended a minimum one year suspension of Mr. Thorn's law license together with the other penalties recommended by the HPS.

Based upon a review of the record submitted, the briefs and argument of the ODC and Mr. Thorn, as well as the applicable legal precedent, this Court disagrees with the length of the suspension recommended by the HPS. Instead, upon a review of both aggravating and mitigating factors, as well as the great harm caused to his clients, this Court finds that a ninety-day suspension from the practice of law is too lenient. This Court imposes a one year suspension of Mr. Thorn's license and, further, adopts the remaining sanctions recommended by the HPS.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Thorn maintains a solo law practice in Morgantown, which is located in Monongalia County, West Virginia. He was admitted to the West Virginia State Bar on April 23, 1997, after successfully passing the Bar Exam. The ODC pursued multiple charges against Mr. Thorn seeking lawyer disciplinary action. The matter arose as a result of ten sworn complaints filed with the ODC. An eleventh complaint resulted from a letter submission to the ODC from another attorney.

Formal charges were filed against Mr. Thorn with the Court on July 14, 2014. After the granting of an extension, Mr. Thorn filed his Answer on September 25, 2014. A hearing was held before the HPS on April 8, 2015. Four of the ten complainants testified. Mr. Thorn testified. Also testifying was an expert witness in counseling and psychology, Russell "Jack" Torsney, Jr.

The HPS sustained Mr. Thorn's objection under Rule 802[1] of the West Virginia Rules of Evidence due to the hearsay problems presented by accusatory exhibits offered on matters in which the complainants did not appear. The HPS did not base any of its findings

---

[1]Rule 802 of the West Virginia Rules of Evidence provides, in pertinent part, that "[h]earsay is not admissible . . . ."

on the veracity or accuracy of the content of accusatory documents.  However, the HPS

recognized that Mr. Thorn had filed responses to many of the complaints and had filed a

Verified Answer to the Statement of Charges wherein he admitted some allegations.

On September 15, 2015, the HPS issued its decision in this matter and filed its

"Recommended Decision of the Hearing Panel Subcommittee."  On October 13, 2015, the

HPS filed an "Amended" Recommended Decision which contained minor corrections.

For summary purposes, and as will be discussed in more detail below, the HPS

found that Mr. Thorn had committed numerous violations of the West Virginia Rules of

Professional Conduct ("Rule" or "Rules"),[2] including one violation of Rule 1.1[3]

(competence); eight violations of Rule 1.3[4] (diligence); seven violations of Rule 1.4(a) and

---

[2]By order entered September 24, 2014, this Court approved comprehensive amendments to the West Virginia Rules of Professional Conduct.  The amendments became effective January 1, 2015.  This Opinion applies the version of the Rules that was in effect at the time of Mr. Thorn's alleged misconduct.  We note that the substance of the new Rules would not have resulted in a different disposition.

[3]Rule 1.1 provides "Competence.  A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[4]Rule 1.3 states "Diligence.  A lawyer shall act with diligence and promptness in representing a client."

(b)[5] (communication); seven violations of Rule 3.2[6] (expediting litigation); two violations of

Rule 1.15(b)[7] (safekeeping property); five violations of Rule 1.16(d)[8] (declining or

---

[5]Rule 1.4 addresses "Communication. (a) A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[6]Rule 3.2 provides "Expediting litigation. A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

[7]Rule 1.15 states, in part,

> Safekeeping property. . . . (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person shall promptly render a full accounting regarding such property.

[8]Rule 1.16 addresses

> Declining or terminating representation. . . . (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

terminating representation); five violations of Rule 8.1(b)[9] (bar admission and disciplinary

matters); and three violations of Rule 8.4(c)[10] (misconduct).

### A. *Complaints Before ODC and Findings of the HPS*

The underlying complaints and testimony may be summarized as follows:

**1. No. 13-06-191: Complaint of Debra Miller.** By sworn complaint of May 3, 2013, Ms. Miller alleged that she hired Mr. Thorn in October 2011 to represent her in a probate matter. Ms. Miller paid Mr. Thorn $3,695.00. The nature of the complaint was that Mr. Thorn had failed to advance the case in the proper court, had cancelled hearings, was nonresponsive to telephone messages, had failed to provide an itemized bill as requested, failed to provide a refund of the unearned portion of the retainer, and refused to return her file.

In a verified response filed on July 12, 2013, Mr. Thorn asserted that the retainer was "mainly exhausted." Mr. Thorn further stated that he would provide Ms. Miller

---

[9]Rule 8.1 states "Bar admission and disciplinary matters. [A] lawyer in connection with . . . a disciplinary matter, shall not: . . . (b) . . . knowingly fail to respond to a lawful demand for information from . . . disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

[10]Rule 8.4. addresses "Misconduct. It is professional misconduct for a lawyer to: . . . (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

with the balance of the retainer, but that Ms. Miller refused to tell him where to send it.

Subsequently, Ms. Miller informed the ODC that Mr. Thorn had not provided her with her file. Communication between the ODC and Mr. Thorn took place between August 2013 and October 2013 regarding the return of the file.

Ms. Miller did not appear at the HPS hearing. Mr. Thorn disputed that he neglected Ms. Miller's case. Mr. Thorn testified that on or about October 16, 2012, he filed what he believed to be an appropriate pleading to remove Ms. Miller's brother as a fiduciary in the probate matter in the Circuit Court of Marion County. Mr. Thorn testified that he chose Marion County because that is where the brother had been appointed and that was where the property was located. Mr. Thorn stated that he had successfully proceeded in similar probate matters by filing in circuit court rather than with the county commission.

Mr. Thorn testified that Ms. Miller was dissatisfied due to his continuances resulting from scheduling conflicts. Thus, she terminated the representation. He testified that he probably had not been responsive to Ms. Miller's inquiries. By his own admission, he was not diligent and responsive to Ms. Miller.

Mr. Thorn admitted that he owed Ms. Miller a partial refund of $1,100.00. He

6

stated that it was a flat fee case with no written fee agreement. Mr. Thorn conceded that he did not provide an itemized accounting of his time. He stated that his usual hourly rate was $200.00. He testified that Ms. Miller had repeatedly refused a partial refund as she believed that she was entitled to a refund of the entire fee. Mr. Thorn further testified regarding efforts made to return the case file.

The HPS credited Mr. Thorn's admissions that he was not diligent, not responsive with communication, had answering service problems, and had not refunded the unearned portion of the fee owed to Ms. Miller. In light of this conduct, the HPS found that, in neglecting Ms. Miller's case and failing to take appropriate action, he violated Rule 1.3 regarding diligence. It also determined that Mr. Thorn violated Rule 1.4 regarding communication due to the failure to keep Ms. Miller informed as to the status of the matter and his failure to respond to her requests for information.

Furthermore, the HPS refused to find a violation of Rule 3.2 for failing to expedite litigation because it found that Mr. Thorn filed a petition in circuit court to remove Ms. Miller's brother as a fiduciary. It was noted by the HPS that the normal procedure would be to file an estate proceeding before the county commission. However, it credited the testimony of Mr. Thorn that he had used the circuit court for probate matters in the past with success.

The HPS also declined to find that Mr. Thorn violated Rule 1.15 regarding safekeeping property or Rule 1.16 as to declining or terminating representation. In that regard, the HPS concluded that the evidence regarding the return of the unearned portion of the retainer and the efforts to return Ms. Miller's file were not entirely clear. Since Ms. Miller did not appear at the hearing, the violations of Rule 1.15 and 1.16 were not proven by clear and convincing evidence.

**2.    No. 13-03-230: Complaint of Bonnie R. Hughes.** According to her sworn complaint of May 21, 2013, Ms. Hughes retained Mr. Thorn on February 28, 2013, for representation in a time-sensitive guardianship matter. She paid Mr. Thorn a retainer of $1,185.00. Ms. Hughes stated that she called Mr. Thorn three times per week to obtain the status of the matter, and she left messages with the answering service. She claimed that by May 2013, Mr. Thorn had taken no action on the matter. Ms. Hughes terminated Mr. Thorn's representation by email dated May 13, 2013, and requested a refund of her retainer. Ms. Hughes' new counsel also sought a refund on her behalf. Ultimately, Ms. Hughes received a refund in late July 2013.

Ms. Hughes did not appear or testify at the hearing. Mr. Thorn testified that it was "possible" he failed to respond to Ms. Hughes' phone calls. He acknowledged that "nothing happened" in her case. Therefore, he provided a refund. He further acknowledged

8

that the refund was not made until July 2013, after the filing of the ethics complaint. Mr. Thorn indicated that, from his perspective, "nothing happened" in her case because he was waiting for necessary information to be sent to him from a third party.

The HPS concluded that Mr. Thorn neglected Ms. Hughes' case, failed to respond to her inquires, engaged in dilatory practices, and failed to return the unearned fees until after the ethics complaint was filed. Accordingly, the HPS determined that he violated Rule 1.3 (diligence), Rule 1.4 (communication), Rule 3.2 (expediting litigation), and Rule 1.16 (declining or terminating representation).

**3.** **No. 13-02-305: Complaint of Jessica D. Morris.** According to the sworn complaint of July 12, 2013, Ms. Morris retained Mr. Thorn for representation in a divorce action in October 2011. In her complaint, Ms. Morris states that Mr. Thorn filed the appropriate paperwork but failed to advance the case. She complained that her calls and emails were not returned. Ms. Morris further stated that Mr. Thorn failed to provide her with pleadings and failed to provide documents to the court and opposing counsel.

Eventually, Ms. Morris sought representation from another lawyer. By letter dated February 20, 2014, Ms. Morris terminated Mr. Thorn's representation. She requested an itemized accounting of legal services and a refund of her retainer.

9

Ms. Morris testified at the HPS hearing that phone calls were not returned and emails were not answered. She kept a log of her communication attempts due to her frustration. She felt she was entitled to a full refund of her retainer. She could not recall how much she had paid Mr. Thorn.

Mr. Thorn denied neglecting Ms. Morris' case. However, Mr. Thorn testified that he failed to communicate well and probably did not respond to the letter request for an accounting and a refund. Mr. Thorn testified that he believed he earned the full retainer which he estimated to be $2,500.00. He testified that he had more than fourteen hours of time in the case when he was terminated. Mr. Thorn testified that the reason for the delay was due to the family court's cancellation of proceedings without notice to him. He further testified that Ms. Morris was the type of client who needed reassurance and hand-holding. Because he suffered a period of depression during this time, he claimed that he was unable to muster the energy to hand-hold such clients.

The HPS found that Mr. Thorn neglected the case, failed to take appropriate action, failed to keep Ms. Morris informed, failed to respond to requests for information, engaged in dilatory practices, failed to promptly deliver the unearned portion of the retainer or provide a full accounting, and failed to present any records or evidence that he earned the entirety of the fee paid. Therefore, the HPS found that Mr. Thorn violated Rule 1.3

(diligence), Rule 1.4 (communication), Rule 3.2 (expediting litigation), Rule 1.15 (safekeeping property), and Rule 1.16 (declining or terminating representation).

**4.      No. 13-05-384: Complaint of Todd A. Goodnight.** According to his sworn complaint of August 19, 2013, Mr. Goodnight states that Mr. Thorn was appointed to represent him in criminal matters and in abuse and neglect proceedings. Mr. Goodnight complained that Mr. Thorn failed to appear for scheduled hearings in the abuse and neglect case on three occasions. He further complained that a circuit court order relieving Mr. Thorn of his representation in the abuse and neglect case also indicated that Mr. Thorn had failed to appear at multidisciplinary team ("MDT")[11] meetings and that he had been nonresponsive to phone calls from the court. Mr. Goodnight complained that Mr. Thorn additionally did not respond to his own inquiries.

Mr. Goodnight did not appear at the hearing. Counsel for the ODC represented that he had been paroled, and they had been unable to locate him.

Mr. Thorn asserted that none of Mr. Goodnight's complaints affected the final

---

[11]Multidisciplinary treatment teams are convened by the circuit courts for the purpose of reporting to the court regarding permanency and other matters for a child who is the subject of abuse and neglect proceedings. W. Va. R. P. for Child Abuse & Neglect Proceed. 51.

disposition of the criminal or abuse and neglect cases. At the hearing, Mr. Thorn did not dispute that he failed to attend MDT meetings and may not have responded to calls. However, Mr. Thorn testified that he missed some meetings because of other conflicting court appearances and that, in other instances, he was not notified of meetings. According to Mr. Thorn, Mr. Goodnight was incarcerated and could not participate in a parenting plan or an improvement period. Thus, attendance by Mr. Thorn at the MDT meetings would not have added any value. Mr. Thorn testified at some length regarding Mr. Goodnight's multiple challenges with the criminal system and the favorable result obtained in representing him.

The HPS found that Mr. Thorn secured an excellent result in the criminal case for Mr. Goodnight. It found that the less favorable result in the abuse and neglect proceeding was a result of the behavior and arrests of Mr. Goodnight, rather than any lack of communication or missed appearances at the MDT meetings. Thus, the HPS found no violations of the Rules.

**5. No. 13-02-414: Complaint of Mark D. Benkiel.** According to the sworn complaint of September 4, 2013, Mr. Benkiel retained Mr. Thorn under a contingency fee payment to represent him relating to injuries Mr. Benkiel sustained in an automobile accident in Pennsylvania on April 23, 2010. Mr. Benkiel alleged that, despite his repeated

phone calls and texts, Mr. Thorn failed to take any action for three years. Mr. Benkiel asserted that Mr. Thorn failed to file a complaint on his behalf before the statute of limitations expired. According to Mr. Benkiel, Mr. Thorn advised him that Pennsylvania had a three-year statute of limitations. Mr. Benkiel further stated that, on April 24, 2013, Mr. Thorn gave him a one-page complaint to file *pro se* in Allegheny County, Pennsylvania. The clerk refused to accept the complaint due to it being-time barred by the statute of limitations.

By letter dated September 11, 2013, the ODC sent Mr. Thorn a copy of the complaint and directed him to file a verified response within twenty days. Mr. Thorn did not respond. By certified letter dated November 15, 2013, the ODC requested Mr. Thorn to respond by November 26, 2013. The letter further informed Mr. Thorn that, if he did not respond, he would either be subpoenaed to appear to give a sworn statement, or the allegations of the complaint would be deemed admitted, and the matter referred to the Investigation Panel of the Lawyer Disciplinary Board. Mr. Thorn again failed to respond. A subpoena to appear at the ODC was issued. However, the ODC agreed to cancel the appearance if Mr. Thorn responded by February 28, 2014.

In his verified response of March 13, 2014, Mr. Thorn stated that the underlying matter was in pending litigation. He requested permission to respond when the

13

litigation was resolved.

Mr. Benkiel appeared at the hearing by telephone. He testified that he grew up with Mr. Thorn. He also testified that he was an advertising representative for Mr. Thorn in his law practice which consisted of the metropolitan area of Morgantown, including West Virginia and Pennsylvania. He stated that he was not aware that Mr. Thorn was not licensed to practice law in Pennsylvania. Mr. Benkiel stated that he provided Mr. Thorn medical records and other information relating to the case. Additionally, Mr. Benkiel testified regarding learning that the statute of limitations had expired and that there was nothing he could do to pursue the matter. He further stated that he continued to experience neck pain from the automobile accident in which the vehicle he was operating was rear-ended at a traffic light.

According to Mr. Benkiel, he obtained counsel and attempted to pursue damages from Mr. Thorn. He abandoned the attempt after learning that Mr. Thorn was filing for bankruptcy. In the process of negotiations, Mr. Thorn offered him an arrangement whereby he would hire Mr. Benkiel as a "consultant" for a fee of $1,000.00 per month for twenty-four months. Mr. Benkiel's job was to keep the accusations against Mr. Thorn confidential. He declined the offer.

Mr. Thorn testified that Mr. Benkiel was aware that he was not licensed to practice law in Pennsylvania. He testified that Mr. Benkiel knew that he needed counsel in Pennsylvania. Mr. Thorn denied giving advice regarding Pennsylvania law. He acknowledged a lack of diligence and promptness. Mr. Thorn also indicated that the case "probably fell along the wayside."

Mr. Thorn testified that he filed for personal bankruptcy in 2014. He stated that he did not have malpractice insurance, and he admitted offering Mr. Benkiel $1,000.00 per month for twenty-four months. Mr. Thorn stated that he was willing to make restitution to Mr. Benkiel in the amount of $24,000.00, which he determined to be fair considering the facts.

Mr. Thorn testified that the consulting offer was in response to a demand for $75,000.00 from Mr. Benkiel's attorney. The offer was crafted as opposing counsel did not want the debt discharged in bankruptcy. Mr. Thorn wanted to prevent disclosure of the situation. A follow-up demand was made for $42,000.00 at a rate of $1,000.00 per month. No agreement was ever reached.

The HPS found that Mr. Thorn incorrectly advised as to the law in another jurisdiction, failed to take any action before the statute of limitations expired, failed to keep

15

Mr. Benkiel informed, failed to respond to requests for information, engaged in dilatory practices, and failed to comply with the ODC's requests for information. Therefore, the HPS found that there were violations of Rule 1.1 (competence), Rule 1.3 (diligence), Rule 1.4 (communication), Rule 3.2 (expediting litigation), and Rule 8.1 (bar admission and disciplinary matters).

**6.     No. 13-02-417: Complaint of Daniel N. Britton.** By sworn complaint of August 30, 2013, Mr. Britton retained Mr. Thorn in June 2013 for representation in a family court matter. Mr. Britton paid a retainer of $1,700.00. The issue involved a time sensitive matter regarding the modification of a parenting plan that would permit Mr. Britton's children to attend a different school. Mr. Britton complained that, despite the urgency of the matter, it took Mr. Thorn five weeks to file the necessary documents. Furthermore, Mr. Britton complained that he contacted the court directly for a hearing date, because Mr. Thorn did not respond to phone calls. A hearing was not held until August 2013, after school had started.

By letter dated September 16, 2013, the ODC directed Mr. Thorn to file a verified response within twenty days. Mr. Thorn failed to respond. By certified letter dated November 15, 2013, the ODC requested a response by November 21, 2013. The letter further informed Mr. Thorn that, if he did not respond, he would be either subpoenaed to

appear to give a sworn statement, or the allegations in the complaint would be admitted, and the matter would be referred to the Investigative Panel of the Lawyer Disciplinary Board. Mr. Thorn again failed to respond. He was issued a subpoena. On February 10, 2014, the ODC agreed to cancel the appearance if Mr. Thorn provided a verified response by February 28, 2014.

Mr. Thorn filed a verified response on March 13, 2014, denying that the late August hearing date was a factor in the decision of the court in the underlying case. Mr. Thorn also denied that he owed Mr. Britton a refund.

Mr. Britton testified that it was his belief that, if Mr. Thorn had filed the pleadings sooner, he would have had an earlier hearing and obtained a more favorable result. He also testified that he did not believe that Mr. Thorn earned the $1,700.00 retainer paid to him.

At the hearing, Mr. Thorn testified that the matter was a flat fee representation which was not refundable. He acknowledged communication and diligence issues in representing Mr. Britton. However, he denied that the issues contributed to the result of the case. Mr. Thorn further testified that he earned his fee and discussed details of the case in support of the result. Mr. Thorn also testified that he failed to timely respond to the ODC

17

because he had "given up" for a "period of time" and "wasn't interested in responding."

The HPS found that Mr. Thorn failed to keep Mr. Britton informed, failed to respond to requests for information, engaged in dilatory practices, and failed to comply with the ODC's requests for information. Therefore, the HPS determined that Mr. Thorn violated Rule 1.3 (diligence), Rule 1.4 (communication), Rule 3.2 (expediting litigation), and Rule 8.1 (bar admission and disciplinary matters).

**7.      No. 13-02-538: Complaint of Martin H. Donovan.** According to his sworn complaint of October 25, 2013, Mr. Donovan retained Mr. Thorn in November 2011 for an expungement matter. Mr. Donovan received no updates from Mr. Thorn. In October 2013, Mr. Donovan contacted the court to determine the status of the matter. Mr. Donovan learned that no expungement pleadings had been filed on his behalf.

Mr. Thorn did not respond to the initial November 21, 2013, letter of the ODC directing him to file a verified response. Ultimately, in March 2014, he filed a verified response to the complaint. Mr. Thorn acknowledged that he failed to complete the work for Mr. Donovan and represented that a full refund would be issued to him.

Mr. Donovan did not appear at the HPS hearing. Mr. Thorn admitted that he

18

filed nothing on behalf of Mr. Donovan. He also acknowledged that he still owed Mr. Donovan a refund. Mr. Thorn testified that the funds were probably in his operating account rather than an IOLTA[12] account, despite the fact that the funds were unearned. Mr. Thorn admitted that he failed to act with reasonable diligence and promptness in his representation of Mr. Donovan.

The HPS found that Mr. Thorn violated Rule 1.3 (diligence), Rule 1.4 (communication), Rule 3.2 (expediting litigation), Rule 1.16(d) (declining or terminating representation), Rule 8.1 (bar admission and disciplinary matters), and Rule 8.4 (misconduct).

**8.**      **No. 13-02-542: Complaint of Tony Bethea.** According to the sworn complaint of Tony Bethea, Mr. Thorn was appointed in December 2004 by the Circuit Court of Monongalia County to file a writ of habeas corpus on behalf of Mr. Bethea. On January

---

[12]An IOLTA account is an Interest on Lawyer Trust Account. Pursuant to Rule 1.15(f) of the Rules of Professional Conduct,

> [a] lawyer who receives client funds that are nominal in amount or are expected to be held for a brief period shall establish and maintain a pooled, interest or dividend-bearing account for the deposit of such funds at an eligible financial institution in compliance with State Bar Administrative Rule 10.

8, 2013, Mr. Thorn was relieved of representation by court order. Another attorney was appointed to represent Mr. Bethea. Mr. Bethea alleged that, despite several requests, Mr. Thorn had not turned over his case files to his newly appointed counsel.

Mr. Bethea did not testify at the hearings.

Mr. Thorn testified that he did not believe he was negligent in his representation of Mr. Bethea because, when he met with Mr. Bethea at Mount Olive, he had explained that there was not a valid argument to advance in a habeas proceeding. Moreover, Mr. Thorn responded that Mr. Bethea's new counsel should have had access to the file at the courthouse. He further stated that he delivered everything in his possession to counsel the same day he filed the response with the ODC. Mr. Thorn testified that, while he did not recall specifics, his depression could have affected his ability to copy and turn over files.

The HPS determined that Mr. Thorn had violated Rule 1.3 (diligence), Rule 3.2 (expediting litigation), and Rule 1.16(d) (declining or terminating representation).

9. **No. 13-02-578: Complaint of Lisa A. Long.** According to her sworn complaint of November 24, 2013, Ms. Long hired Mr. Thorn in mid-2012 to file a bankruptcy action on behalf of herself and her husband. Ms. Long complained that no action

had been taken and that her calls to Mr. Thorn were not returned. Mr. Thorn responded that there had been scheduling issues resulting in the delay of the case.

Ms. Long did not appear or testify at the hearing. Mr. Thorn disputed that he had been unresponsive. He asserted that the delays were due to the failure of Ms. Long to provide necessary documentation. He also testified to several in-office meetings with the Longs and denied not responding to their phone calls. Mr. Thorn acknowledged that Ms. Long was entitled to a refund. However, he was uncertain as to how much she had paid him. Mr. Thorn indicated that the retainer remained in his operating account. The funds were not placed in an IOLTA account from which he could draw funds only when they were earned.

The HPS credited the testimony of Mr. Thorn with respect to the need for documentation from Ms. Long to proceed with a bankruptcy case. The HPS recognized that documentation is necessary in a bankruptcy proceeding. With no testimony from Ms. Long, the HPS found that the ODC had failed to prove violations of Rule 1.3 (diligence) and Rule 1.4 (communication).

Nevertheless, the HPS further determined that Mr. Thorn engaged in dilatory practices and intentionally placed the client funds in an operating account rather than an IOLTA account. Therefore, the HPS found that Mr. Thorn violated Rule 3.2 (expediting

21

litigation) and Rule 8.4(c) (misconduct).

        **10.**     **No. 14-02-058: Complaint of Carly A. Wears.** Ms. Wears' complaint was filed on January 27, 2014. She states that in August 2013, she paid Mr. Thorn a $2,500.00 retainer to represent her in a child custody matter. Ms. Wears complained that Mr. Thorn was routinely nonresponsive to her calls. She asserted that he was two months late in filing discovery responses. Ultimately, Ms. Wears terminated the representation and requested her file and a return of the remainder of her retainer by letters dated October 23, 2013, and November 27, 2013. Ms. Wears obtained her file on December 10, 2013.

        By letter dated January 3, 2014, the ODC sent Mr. Thorn a copy of the complaint filed by Ms. Wears. Mr. Thorn was directed to file a verified response in twenty days. The ODC's letter notified Mr. Thorn that failure to respond may be regarded as an admission of the allegations and may form the basis for a statement of charges. Mr. Thorn failed to respond.

        At the HPS hearing, Ms. Wears testified that communication with Mr. Thorn initially was "really, really awesome." However, Ms. Wears stated that "it slowed down to nonexistent," such that the change in Mr. Thorn made it seem like there was something wrong or that personal problems existed. Ms. Wears testified that she believed Mr. Thorn

22

was competent, but that he had not provided a refund or an itemization of his fee.

Mr. Thorn admitted to communication issues and to being unresponsive to Ms. Wears' calls. He testified that he did not miss any discovery deadlines as he had an agreement with opposing counsel to extend discovery. Mr. Thorn asserted that he earned the full retainer paid by Ms. Wears. However, he did not provide documentation regarding the time he expended on the matter.

The HPS credited Mr. Thorn's explanation that he did not miss discovery deadlines due to an extension agreement with opposing counsel. Thus, Ms. Wears was not harmed. The HPS concluded that no disciplinary action was warranted with respect to that aspect of the matter.

On the other hand, the HPS found that Mr. Thorn failed to keep Ms. Wears informed as to the status of her case, failed to respond to requests for information, failed to explain important legal issues, failed to provide records or evidence of the fee earned, failed to comply with the ODC's request for information, and intentionally placed the client funds in his operating account, rather than his IOLTA account.

Accordingly, the HPS determined that Mr. Thorn violated Rule 1.4

(communication), Rule 1.16(d) (declining or terminating representation), Rule 8.1 (bar admission and disciplinary matters), and Rule 8.4(c) (misconduct).

**11.     No. 14-02-183: Complaint of Office of Disciplinary Counsel.** By letter dated February 28, 2014, Attorney Delby B. Pool advised disciplinary counsel of an issue in a family court matter involving her client, Amy Dovola, and Ms. Dovola's former husband, who was represented by Mr. Thorn. According to Ms. Pool, a negotiated settlement was reached on October 30, 2013, which required Mr. Dovola to pay $6,500.00 to Ms. Dovola within sixty days. Mr. Thorn was to prepare the agreed order.

Mr. Dovola represented to Ms. Pool and Ms. Dovola that the $6,500.00 had been timely sent to Mr. Thorn. According to Ms. Pool, the funds had not been forwarded by Mr. Thorn. Bank records indicated that a check in the amount of $6,500.00 made out to Mr. Thorn by Mr. Dovola was deposited into Mr. Thorn's client trust account on December 12, 2013.

Ms. Pool noted that she sent Mr. Thorn several reminders requesting that the funds be forwarded. On January 17, 2014, Ms. Pool filed a Motion for Sanctions alleging that Mr. Thorn had not tendered the funds and had not prepared an agreed order.

On February 12, 2014, Mr. Thorn provided Ms. Pool a check in the amount of $6,500.00 from his client trust account. Ms. Pool deposited the check in her IOLTA account and disbursed the funds to Ms. Dovola the next day. On February 27, 2014, Ms. Pool learned that the check was marked "not sufficient funds." Ms. Pool notified Mr. Thorn of the bad check and requested the funds be provided immediately.

The ODC sent a letter to Mr. Thorn dated March 31, 2014, directing him to file a verified response to the complaint within twenty days. He was informed that failure to respond may be regarded as an admission of allegations and may form the basis for a statement of charges. Mr. Thorn failed to respond.

Ms. Pool did not appear at the hearing, nor did her client. At the hearing, Mr. Thorn testified that, during the end of 2013, he was not doing a good job of keeping track of his accounting or with placing funds in the proper accounts. He testified that he believed the check to Ms. Pool was returned due to the fact that he provided a refund to another client before depositing the funds to cover the amount. Mr. Thorn denied misappropriating client funds. He acknowledged the seriousness of client trust account violations. Mr. Thorn testified that he made a cash payment to Ms. Pool and that she withdrew the Motion for Sanctions.

Mr. Thorn also testified that there were technical issues in dispute relating to the drafting of the agreed order. He states that he wanted to have the agreed order language differences resolved prior to making payment of the $6,500.00.

The HPS credited the testimony of Mr. Thorn that he did not intentionally and knowingly convert funds to his own use. However, the HPS found that the lengthy delay in transferring funds to Ms. Pool was unreasonable.

Accordingly, the HPS found that Mr. Thorn violated Rule 1.3 (diligence), Rule 3.2 (expediting litigation), Rule 1.15 (safekeeping property), and Rule 8.1 (bar admission and disciplinary matters).

### B. Expert Witness Testimony

Russell "Jack" Torsney, Jr., is a nationally certified, masters level, licensed professional counselor and a licensed social worker. Mr. Torsney has thirty years of experience as a counselor. His practice is located in Morgantown, West Virginia. He works as a counselor with the Federal Probation Office and with Community Corrections. He has testified as an expert in state and federal courts in northern West Virginia. Mr. Torsney provides counseling for depression on a daily basis. His emphasis has been addiction, substance abuse, and sexual offenses. Mr. Torsney has known Mr. Thorn for more than ten

26

years and has worked with him professionally.

Mr. Torsney did not provide counseling to Mr. Thorn during the period of time at issue in the disciplinary complaints. Rather, he was asked to review the history of Mr. Thorn's mental status during the relevant time period in order to evaluate Mr. Thorn's emotional condition. Mr. Torsney recalled observing that Mr. Thorn had lost a considerable amount of weight during the relevant time period. Weight loss is a criteria for major depressive disorders.

During the pendency of the underlying proceedings, Mr. Torsney met with Mr. Thorn one time for approximately two hours. Mr. Torsney indicated that Mr. Thorn disclosed feelings of hopelessness, worthlessness, and lack of ability to enjoy life for over a year. The history revealed that Mr. Thorn stayed home and avoided interaction with others much of the time. Suicidal ideation was disclosed.

Among other things, Mr. Torsney opined that Mr. Thorn suffered significant depression during the time period at issue, and that the depression appeared to be more situational as opposed to clinical. He further opined that despite some continued symptoms of depression, Mr. Thorn had made progress, took responsibility for neglecting client matters, and currently was fit to practice law.

### C. Testimony of Mr. Thorn

Mr. Thorn testified regarding his struggle with a deep and significant depression during the 2012 to 2013 timeframe. His depression was triggered by the demise of his marriage and subsequent divorce. The depression directly contributed to his practice problems. At one point, he contemplated giving up, walking away, and surrendering his law license. Mr. Thorn acknowledges that there were periods of time relevant to all the complaints when he was not professionally fit, not responding appropriately, and not diligent in communicating with his clients due to his depression, lack of energy, and inability to wholly function.

Mr. Thorn testified further that he independently struggled through his depression and claimed that he had come out of it. He states that he has come to know that he is a good lawyer, has rebuilt his life, and is now capable of strong representation of his clients. He further testified to practice changes he has made with respect to limiting appointed criminal cases thereby reducing travel and schedule conflicts. Mr. Thorn also testified to practice changes with client communication and access.

### D. Factors Considered by the HPS

The factors to be considered in addressing lawyer disciplinary matters are well-established as follows:

28

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

Regarding the first factor, the HPS found that Mr. Thorn engaged in conduct that violated the duties owed to his clients, the public, the legal system, and the profession. There were multiple violations of the duty to act with reasonable diligence and promptness, multiple failures to communicate, return files, refund unearned fees, and respond to the ODC among other failures.

As to the second factor, the HPS found that Mr. Thorn acted negligently, but not intentionally and knowingly. The HPS concluded that the evidence "strongly suggests" that Mr. Thorn's conduct resulted from the effects of his mental disability and some negligence rather than willful neglect or some intentional or knowing plan.

29

With respect to the third factor regarding whether there was injury, the HPS found that there was real injury to clients in failing to communicate and harm in failing to perform work. Some witnesses had their trust and confidence in lawyers and the legal system negatively affected by Mr. Thorn's misconduct. Further, Mr. Benkiel suffered real harm resulting from Mr. Thorn's failure to associate with counsel licensed in Pennsylvania and missing the statute of limitations. Some complainants were still owed refunds for fees paid to Mr. Thorn who failed to perform work or did not complete it.

The HPS was concerned regarding Mr. Thorn's lack of knowledge regarding the rules surrounding non-refundable, so-called "flat fee" retainers. For instance, he was unaware that the burden is always on the lawyer to show the reasonableness of fees charged and, regardless of the fee structure, upon termination, unearned advance fees must be refunded.

As to the fourth factor regarding the existence of aggravating or mitigating factors, the HPS found the presence of both aggravating and mitigating factors. As to aggravating factors, the HPS found that there was a pattern and practice of misconduct exhibited by Mr. Thorn with respect to failing to communicate with his clients, failing to diligently pursue claims on behalf of clients, and failing to respond to requests from the ODC. However, the HPS found that the conduct was an anomaly in Mr. Thorn's seventeen

years of practice. The HPS found that the conduct coincided with a mental disability that appeared to have been resolved.

As to mitigating factors that may justify a reduction in the degree of discipline to be imposed, the HPS noted that there had been no prior discipline and that Mr. Thorn expressed remorse and contrition. Further, the HPS found that there was an absence of a dishonest or selfish motive and that he had a cooperative attitude toward the proceedings.

The HPS found that Mr. Thorn was suffering from significant situational depression during the time period of the complaints which caused the misconduct. It was determined that there was recovery and sustained rehabilitation achieved prior to counseling. There were no new complaints of misconduct.

### E. The HPS's Recommendation and the ODC's Objections

To this Court, the HPS recommended that Mr. Thorn (1) have his license suspended for ninety days; (2) be required, prior to reinstatement, to issue refunds to Debra Miller in the amount of $1,100.00 and Martin Donovan in the amount of $600.00 and to pay restitution in the amount of $24,000.00 to Mark D. Benkiel within eighteen months of reinstatement; (3) be required, prior to reinstatement, to issue an itemized statement of account to Jessica Morris, Daniel Britton, Lisa Long, and Carly Wears, in addition to

31

providing refunds to them as appropriate; (4) be supervised for a period of one year by an attorney agreed upon by the ODC and Mr. Thorn; (5) submit to counseling with a licensed psychologist or psychiatrist beginning immediately and continuing at least eighteen months after the date of the issuance of this Court's mandate and that semi-annual reports describing the nature of the counseling, the nature of therapy, the progress, and verifying that Mr. Thorn's mental status is such that he is capable of performing as a lawyer be filed with the ODC; and (6) that Mr. Thorn be required to pay the costs of the disciplinary proceedings.

The ODC asserts that clear and convincing evidence supports findings of additional violations of the Rules. The ODC further asserts that the suspension period proposed by the HPS is inadequate. The Court observes that the ODC sought a recommendation for a two year suspension of Mr. Thorn's law license from the HPS. The ODC now requests that Mr. Thorn's law license be suspended for at least one year, such that reinstatement be pursuant to the petition procedure set forth in Rule 3.32[13] of the Rules of Lawyer Disciplinary Procedure rather than the automatic reinstatement for periods of suspension of ninety days or less pursuant to Rule 3.31.[14]

---

[13]Rule 3.32 of the Rules of Lawyer Disciplinary Procedure provides, among other things, that a lawyer who has had his or her license to practice law suspended for a period of more than three months, and who desires reinstatement, must file a verified petition with this Court.

[14]Rule 3.31 of the Rules of Lawyer Disciplinary Procedure provides for a process of automatic reinstatement when a lawyer has been suspended for a period of three
(continued...)

32

Mr. Thorn asserts that the ninety-day sanction recommended by the HPS is an effective and powerful form of punishment. He states that his current clients will suffer hardship during the suspension. The suspension will occur at a time when he is "back at full strength" in terms of providing legal services. Mr. Thorn contends that the suspension, together with the other recommendations of the HPS, properly serves to punish him and fully protect the public.

## II.

## STANDARD OF REVIEW

The standard of review in lawyer disciplinary matters is as follows:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

Furthermore, it is well-settled that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments

_____

[14](...continued)
months or less.

33

of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of the W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

## III.

## DISCUSSION

We first address the ODC's objections to several findings of the HPS. The ODC asserts that, with respect to the Debra Miller complaint, the HPS failed to find violations of Rule 1.15(b) (safekeeping property). Rule 1.16 (declining or terminating representation), and Rule 8.4(c) (misconduct). In this regard, the ODC argues that, despite the failure of Ms. Miller to appear, the evidence is clear and convincing regarding Mr. Thorn's violations because the client's file was not promptly returned, no accounting of services and expenses was made, and the fees were placed in his operating account rather than an IOLTA account. Upon a thorough review of the record, this Court finds that, due to the failure of Ms. Miller to testify, the evidence shows that attempts were made to return the file and to refund a portion of the fee. Thus, the findings of the HPS will not be disturbed as to Rule 1.15(b) and 1.16. However, the reliable and substantial evidence demonstrates that Mr. Thorn deposited the fees into his operating account rather than his IOLTA account. Accordingly, the HPS's failure to find a violation of Rule 8.4(c) is not supported by the record evidence.

The ODC also objects to the findings made by the HPS with respect to the Goodnight complaint. The ODC asserts that clear and convincing evidence established violations of Rule 1.1 (competence), Rule 1.3 (diligence), and Rule 1.4 (communication). The ODC contends that some missed MDT meetings were due to Mr. Thorn's failure to drive from Morgantown to Fairmont because of his depression. The ODC further asserts that the fact that Mr. Thorn's failure to respond or attend meetings had no impact on the result in the matter is inconsequential.

Upon a thorough review of the evidence, this Court finds that the HPS finding that there were no violations committed by Mr. Thorn in his representation of Mr. Goodnight is not supported by reliable, probative, and substantial evidence. The record establishes that an order withdrawing and substituting counsel was entered on June 13, 2013, in the Circuit Court of Marion County relieving Mr. Thorn of his obligation to represent Mr. Goodnight in abuse and neglect proceedings. The order indicated that Mr. Thorn had not appeared at MDT meetings and had not been responsive to telephone calls made to determine the status of Mr. Goodnight so that permanency planning could proceed. The order provided that it was necessary for attorneys representing parents in abuse and neglect proceedings to be present at MDT meetings. This Court agrees and accordingly concludes that Mr. Thorn committed violations of Rule 1.1 (competence), Rule 1.3 (diligence), and Rule 1.4 (communication).

35

We now turn our attention from the issue of the HPS findings to the question of the appropriate sanctions to be imposed on Mr. Thorn. Rule 3.7 of the Rules of Lawyer Disciplinary Procedure provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *Accord* Syl. pt. 2, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W. Va. 27, 464 S.E.2d 1818 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15 of the Rules of Lawyer Disciplinary Procedure, which provides:

> A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct . . . (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the cost of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

In devising suitable sanctions for attorney misconduct, this Court has recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W. Va. 139, 144, 451 S.E.2d 440, 445 (1994). Furthermore, in considering this matter, we are mindful of this Court's holding in Syllabus point 3 of

36

*Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W. Va. 150, 358

S.E.2d 234 (1987):

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

With these principles in mind, we proceed to consider the four factors set forth

in Rule 3.16 of the Rules of Lawyer Disciplinary Procedure. *See* Syl. pt. 4 *Office of*

*Disciplinary Counsel v. Jordan,* 204 W. Va. 495, 513 S.E.2d 722.

First, we consider whether Mr. Thorn violated a duty owed to a client, to the

public, to the legal system, or to the profession. The record overwhelmingly demonstrates

that Mr. Thorn's conduct violated duties to his clients by failing to communicate with them

and failing to diligently work on their cases. The failures to communicate, respond to

inquiries, and provide sufficient information to clients resulted in stress, frustration, and

annoyance on the part of the clients.

The record also demonstrates that Mr. Thorn performed little to no work in the

matters presented by some complainants. In several instances, he failed to perform work for

which he had already received fees. Some complainants were required to obtain new counsel after concluding that no progress was being made in their respective cases. Mr. Thorn failed to provide accountings for his work. He did not make refunds as appropriate. In Mr. Benkiel's case, no work was performed for a significant period of time resulting in the loss of the ability to recover for injuries from an allegedly at-fault driver.

Mr. Thorn also violated his duties to the legal system and the legal profession. His actions negatively affected the opinion of his former clients as to lawyers and the system. For instance, Mr. Britton testified that the experience "put a bad taste" in his mouth toward lawyers, Mr. Benkiel testified that he distrusted the process as a result of his experience.

Mr. Thorn additionally violated a duty to the legal system with his failures to respond or to timely respond to the ODC. He further failed to address the habeas corpus directives of the circuit court in Mr. Bethea's matter.

Thus, we conclude that Mr. Thorn violated duties he owed to clients, the public, the legal system, and the profession.

The second factor we address is whether Mr. Thorn acted intentionally, knowingly, or negligently. The HPS found that the evidence "strongly suggests" that Mr.

Thorn's conduct resulted "primarily" from mental disability and some negligence. The clear and convincing evidence in the case establishes that Mr. Thorn acted negligently in the representation of his clients.

The Court notes it has serious concerns related to the handling of Mr. Benkiel's personal injury case. As the HPS indicated, the handling of a matter relative to a state in which one is not licensed to practice without obtaining co-counsel and the failure to take action to prosecute the case such that the running of the statute of limitations effectively deprives a client of his cause of action is certainly negligence.

Further, the client, Mr. Benkiel, was also deprived of the meaningful ability to proceed against Mr. Thorn by virtue of Mr. Thorn's personal bankruptcy filing. To make matters worse, Mr. Thorn does not have malpractice insurance, and Mr. Thorn presented a settlement offer to Mr. Benkiel that raises troubling concerns. Mr. Thorn offered Mr. Benkiel a "job" as a "consultant" at a rate of $1,000.00 per month. The "job" was to keep quiet about the professional negligence accusations. Like the HPS, this Court is concerned that the offer could be construed in bankruptcy proceedings as creating favorable treatment for one creditor over another. The settlement offer appears to satisfy debt as compensation for work that did not exist. The effort by Mr. Thorn to craft an offer that would circumvent bankruptcy proceedings while maintaining confidentiality regarding his conduct resulting in

the running of the statute of limitations amounts to an intentional and knowing act.

Thus, we conclude that the bulk of Mr. Thorn's conduct in violation of the Rules was negligent. However, the actions taken with respect to negotiating Mr. Benkiel's malpractice claim rise to the level of knowing and intentional acts.

Third, we examine the amount of real or potential injury. Without question, Mr. Thorn's conduct in failing to communicate and work diligently on the legal matters confronting his clients resulted in intangible injuries including stress, frustration, annoyance, and delay.

The real harm suffered by Mr. Benkiel is significant. Mr. Thorn valued Mr. Benkiel's lost claim at a minimum of $24,000.00. To date, almost four years later, Mr. Benkiel still has not received any compensation for his injuries resulting from the accident or from the damages resulting from Mr. Thorn's legal negligence.

Two complainants are owed refunds for fees they paid to Mr. Thorn for work he did not perform or did not complete. Four other complainants are due an accounting of work performed and also may be entitled to refunds.

The record is abundantly clear that Mr. Thorn's violations of the Rules caused real and significant injuries.

We next consider whether any aggravating or mitigating factors are present. This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). A pattern of conduct and multiple offenses may be considered as aggravating factors. *Id.*, 213 W. Va. at 217, 579 S.E.2d at 558.

The HPS determined that Mr. Thorn exhibited a pattern and practice of misconduct on multiple occasions in terms of communication, lack of diligence, and failing to respond to the ODC. However, the HPS determined that it was an anomaly in Mr. Thorn's seventeen years of practice which coincided with a mental disability which appears to be resolved.

The Court finds that the timeframe of the violations and complaints was, for the most part, discrete and related to the depression. However, the issues regarding the complaint of Mr. Benkiel occurred over a period of three years, a large portion of which was outside the claimed period of depression. Similarly, the complaint of Mr. Donovan

41

concerned claims partially outside the period of time Mr. Thorn's practice was affected by his depression. Additionally, with respect to the claims of Mr. Bethea, Mr. Thorn was appointed as counsel in 2004, long before the period of depression began. The gravity of the claims are such that this Court finds a pattern and practice that constitutes aggravating factors.

This Court also finds that the continued failure of Mr. Thorn to issue refunds to Ms. Miller and Mr. Donovan constitutes a pattern of conduct. Mr. Thorn has indicated that he agrees with the HPS and acknowledges that the refunds are due. However, no effort to provide the refunds has been made.

Likewise, the failure to provide itemized statements of accounts to Jessica Morris, Daniel Britton, Lisa Long, and Carly Wears constitutes a continuing pattern of conduct. Again, Mr. Thorn agrees that the itemizations need to be conducted, but he has failed to take any action to provide the itemizations.

Additionally, the depositing of funds in an operating account rather than an IOLTA account is evidence of a systemic pattern and practice that has not been linked to depression.

We next consider whether any mitigating factors were present. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Scott*, 213 W. Va. 209, 579 S.E.2d 550. The Court has set forth the factors which may be mitigating as follows:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *Scott*, *id*.

A review of the record establishes, and the HPS found, that there were mitigating factors present including absence of a prior disciplinary record; absence of a dishonest or selfish motive; and full and free disclosure to the disciplinary board and a cooperative attitude toward proceedings. The HPS also found that Mr. Thorn established clear and convincing evidence that he was suffering from significant situational depression during the timeframe at issue in the complaints.

In Syllabus point 3 of *Lawyer Disciplinary Board v. Dues*, 218 W. Va. 104,

624 S.E.2d 125 (2005), the Court established mental disability as a mitigating factor as follows:

> In a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is medical evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

The unchallenged testimony of the psychology and counseling expert, Mr. Torsney, is instructive. Mr. Torsney opined that Mr. Thorn had, in the past, suffered significant deep depression, currently suffers from depression with fewer symptoms, and would benefit from counseling. He testified as to Mr. Thorn's serious isolation, struggles with functioning, and suicidal thoughts. However, understanding the need to protect the public, Mr. Torsney also opined that he thinks Mr. Thorn is fit to practice law. He further stated that he does not foresee any potential harm to the public from Mr. Thorn maintaining his law license.

Mr. Torsney further testified that Mr. Thorn took full responsibility for neglect of some matters, indicating that the forum of the disciplinary process probably acted as a precipitator to moving Mr. Thorn in the direction away from self-harm to gaining assistance. Finally, Mr. Torsney testified that the was unable to state to a reasonable degree of certainty

44

that the depression was not clinical as opposed to situational. He indicated that he would need to wait and see. Mr. Torsney noted that people with clinical depression sometimes have reoccurring depression, which he referred to as the "roller coaster effect." That is why he believed that Mr. Thorn might benefit from periodic counseling, which would be in his best interest. Mr. Torsney advised Mr. Thorn that he was available to provide counseling and anticipated that Mr. Thorn would contact him.

The testimony of the expert witness and Mr. Thorn as to the role significant depression played with respect to Mr. Thorn's conduct is uncontroverted. The testimony and expert opinion is that Mr. Thorn's deficiencies were directly connected to the serious depression that Mr. Thorn endured. However, we are cognizant of the fact that the expert plainly stated that he was unable to determine whether the depression was situational or clinical with a potential for reoccurrence.

The Court observes, with a notable exception, that the complaints came in a cluster primarily arising from a timeframe corresponding with the demise of a marriage and resulting depression. Mr. Benkiel's complaint presents a significant exception. The deficiency in his legal representation began prior to the onset of Mr. Thorn's personal difficulties and depression. This is a critical factor because Mr. Thorn cannot connect the legal deficiencies with his representation, or lack thereof, of Mr. Benkiel to his depression.

Likewise, the complaints of Mr. Donovan and Mr. Bethea involved significant periods of time outside the period of depression.

While this Court is concerned that Mr. Thorn did not seek and receive help for his depression prior to the institution of disciplinary proceedings, the nature of a deep depression, according to Mr. Torsney, is that sometimes there is a need for a precipitator to move the individual to seek help. Although in oral argument Mr. Thorn represented that he has seen Mr. Torsney on several occasions, we are concerned that Mr. Thorn did not immediately submit to counseling with a licensed psychologist or psychiatrist as recommended by the HPS. It is also of concern, due to the testimony of Mr. Torsney, that there can be a roller-coaster effect with clinical depression that may be at issue here.

This Court also is troubled by the fact that Mr. Thorn did not present a plan for protecting his clients in the event he suffers from depression in the future. This is of concern especially given the expert testimony that Mr. Thorn is at risk for reoccurrences of depression and would benefit from counseling.

Based upon all of the evidence of Mr. Thorn's depression, this Court concludes that the factors for considering a mental disability as mitigating are present. However, the Court determines that the facts dictate that the mitigating factor of mental disability must be

46

given only great weight rather than the greatest weight in considering sanctions. *See Lawyer Disciplinary Bd. v. Dues*, 218 W. Va. at 112, 624 S.E.2d at 133. While depression was a substantial contributing cause of Mr. Thorn's legal deficiencies with respect to the majority of the complaints, a direct link has not been made as to the complaints of Mr. Benkiel, Mr. Donovan, or Mr. Bethea. Moreover, there was no evidence of treatment resulting in a sustained period of rehabilitation.

It is acknowledged that "[l]awyers who suffer from depression can become overwhelmed by seemingly routine or administrative tasks, sometimes literally unable to bring themselves to look at files, to return phone calls, or to open mail (including letters from the discipline agency)." Mary Robinson, *The Professional Cost of Untreated Addiction and Mental Illness of Practicing Lawyers*, 2009 Prof. Law 101, *104 (2009).

In his Answer, Mr. Thorn set out the extreme depression he suffered. He indicated that he was "literally going through the motions of life." He explained how he struggled just to get out of bed. Mr. Thorn has acknowledged that, in retrospect, he wishes that he had sought professional help due to the depression and the suicidal thoughts that came with his overwhelming sense of hopelessness. It is the Court's expectation that the sanctions imposed, which include counseling, will ensure that Mr. Thorn has no more personal setbacks resulting in depression that detrimentally affects his professional services to his

clients.

The record evidences remorse, contrition, cooperation with the disciplinary process, and changes in practice and practice management. Mr. Thorn is to be commended for those actions. However, those actions do not mitigate fully the pattern of conduct and the degree of harm resulting from his violations of the Rules of Professional Conduct.

Based upon the foregoing, we find that the ninety-day suspension from the practice of law together with the other recommendations of the HPS is too lenient. An adequate suspension and other sanctions must serve the interests of the clients, the public, and the administration of justice, and appropriately punish Mr. Thorn for his conduct in violation of the Rules. We believe that lawyers who suffer from depression, or any other mental disability, that impairs the ability to practice law must be encouraged to seek assistance during the time of disability. Otherwise, the interests of clients, the public, and the administration of justice are not protected.[15]

---

[15]*In Lawyer Disciplinary Board v. Albright*, 227 W. Va. 197, 706 S.E.2d 552 (2011), this Court held that a three month suspension as recommended by the HPS was too lenient and instead imposed a one year suspension. The conduct at issue included accepting retainer fees and failing to provide services, failing to refund unused retainer fees, and failing to provide itemized accountings regarding retainers. There were personal problems raised as a mitigating factor. We find the conduct of Mr. Albright to be similar to that of Mr. Thorn in terms of assessing the proper length of suspension to be imposed.

## IV.

## CONCLUSION

For the reasons explained above, we adopt, as moulded, the following sanctions as recommended by the Hearing Panel Subcommittee: (1) that Mr. Thorn's law license be suspended for a period of one year pursuant to Rule 3.15; (2) that, if he has not already done so, Mr. Thorn is ordered to issue refunds to Debra Miller in the amount of $1,100.00, to Martin Donovan in the amount of $600.00, and, within eighteen months of the date of his reinstatement, Mr. Thorn shall make restitution to Mark Benkiel in the amount of $24,000.00 and provide proof thereof to the Office of Disciplinary Counsel; (3) that, prior to reinstatement, Mr. Thorn must issue an itemized statement of account to Jessica Morris, Daniel Britton, Lisa Long, and Carly Wears, in addition to providing them with refunds where appropriate, and provide proof thereof to the Office of Disciplinary Counsel; (4) that, upon reinstatement, Mr. Thorn's practice shall be supervised for a period of one year by an attorney agreed to by the Office of Disciplinary Counsel and Mr. Thorn;[16] (5) that Mr. Thorn submit to counseling with a licensed psychologist or psychiatrist beginning immediately and continuing for at least eighteen months after the date of this Court's mandate in this matter and that, during such period, Mr. Thorn's counselor shall file a report with the Office of Disciplinary Counsel at least semi-annually describing the nature of the counseling, the

---

[16]The goal of supervised practice is to improve the quality and effectiveness of Mr. Thorn's law practice to the extent that Mr. Thorn's sanctioned behavior is unlikely to reoccur.

nature of the therapy, the progress of Mr. Thorn during the period, and verifying that Mr. Thorn's mental status is such that he is capable of performing his profession as a lawyer; and (6) that Mr. Thorn pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions.